Good morning. The first case on today's docket is the case in the interest of A.S. and J.C. minors versus Brittani S. And we have Mr. Bill Milner for the appellant. And we have Ms. Jennifer Camden for the applicant. Mr. Milner, you may proceed. Thank you. May it please the court. My name is Bill Milner. I practice out of Salem, Illinois. And I was court appointed to review this record and to write a brief for the appellate court regarding this case concerning termination of the parental rights of my client in this case. We raised a few issues, and I guess by way of background, this case began in a county other than Marion. They were residing there in the other county at the time this case began and the child sustained injuries. It was eventually transferred to Marion County. What went on, as a way of background, the state initiated these proceedings against the respondent. They began in Salem County. That's where the child was at the time the injuries occurred. Later on, after they went through their proceedings there, they had their initial hearing. Mother was at the hospital with the minor child in Indianapolis, so she was not there at the first hearing where that child was taken into protective custody. Both children were. She did not appear by phone. There was some indication in the record, but it's unclear. The attorney, one of the attorneys, indicated that he had spoken with all parties prior to the hearing and that they felt as though they had an agreement for shelter care at that time. No specific statement that Mother had agreed. There was a statement that the parties agreed. However, the record was clear that Mother was not there at the time. Was she aware of it? She was. I don't think there's any doubt that she had had contact, at least that there was something going on. As with any individual, normal person, I guess not a legal person, she would have known something was going on in the court. I have no reason to doubt that what was indicated on the record was true. But I think it's clear she was not present by phone during that, nor speaking immediately prior to what was related to the judge. But I do think, yes, she did in fact know that something was going on procedurally in the court concerning her children. At a later date, then, the case was set for an adjudicatory hearing still in Salem County. And was the mother with the other child in the hospital at that time? No. During the second adjudication? The shelter care? The shelter care, the very first hearing, yes, she was at the hospital with the minor child who had been injured. We then moved on to the adjudicatory hearing, and when that proceeded, it had originally been set, I believe, about a month or so before June 26th. However, they could not get service on mother, so what they did is they set the adjudicatory hearing in for June 26th of 2012. They published notice in the paper. I don't think there's any dispute that the notice was not published in the timeframe in which it was required prior to the June 26th hearing. It was actually published one time, June 20th, which was only six days prior to the hearing. By statute, it's supposed to be ten. They did, however, proceed on the 26th and defaulted mother and adjudicated both children as neglected by a caregiver. The state then immediately moved to transfer the case to Marion County as they had received information within the last two to three weeks that that's where the families were now residing. So it then transferred and went on to Marion County. In Saline County, where the mother was defaulted, did she have appointed counsel? No, Your Honor. No counsel that had appeared for her at that time or that particular day. So the first time that she appears in court with counsel would have been in Marion County, and then they proceeded on and eventually had a dispositional hearing. The last hearing, though, that you were discussing, was she incarcerated during that time? As far as I know, she was not at that time. She was actually, and I think the state's attorney or whomever was at the hearing in Saline County even suggested that they thought they were all living in the Marion County area. So she had been in and out from time to time, and it's unclear to me. I didn't handle the case or deal actually with her at that point in time, but there are indications that she was in custody at different times. But I don't believe she was at this time because she had been with her child in the other areas as well. But I can't say affirmatively one way or the other. When they appear then at the dispositional hearing in Marion County on November 7, 2012, and then when she finally appeared herself there in Marion County, she had an attorney at that time, and they entered into an agreed dispositional order. Now, at the time of her agreeing to that order, she was at no time advised by the court that she had a right to appeal that dispositional order that she had just entered into or anything else that had occurred prior. It's our position in this case that after all this occurred, she was then ultimately terminated for parental rights, which she was found unfit. Best interests were for termination, and that's what brings us here. Number one, and I know the Supreme Court has spoken, and we cite a case, a particular case in here concerning when, in fact, the court can find a juvenile needs to be sheltered or kept at the adjudicatory hearing. We were arguing, as there was an appellate court case that did, in fact, argue that a mother could be found, that a child could be found not neglected as with regard to one parent and not another. Now, that was a case which we have cited in the brief that basically says, because in this case, there's actually nothing. All it says was that the minor was burned, 43% of her body or of the body, by a caregiver. It was not the parent. It was the caregiver. No, but it was the environment that- I agree. It was an environment- That she was left in. Correct. Which the other child presumably was in the same environment. I understand, Your Honor. And I guess there was some case law that had indicated many times that you could look at the negligence or the impropriety of the one parent and make that determination. However, then the Supreme Court came out, if I can put my- and the state cites the case, which is correct, where the Supreme Court basically says you don't look at whether or not the parents aren't even valued at that time. In other words, was there an injury? Was the child the thing to look at? We argue the opposition, which was a different case. The Supreme Court even commented on that case. So I think it's pretty clear now, even though whether I agree or don't agree, I think it's pretty clear the court has said that you look at whether or not the child needs to be under a warden of the court. You don't look at the negligence of the parents. So with regard to that first argument, I do not think our argument is strong. It would be my arguing that the Supreme Court should look at this again, but I don't really have a basis for that. So I'm just being honest with the court. But as we start putting all these things together, we then moved on to the dispositional here. And that's an important phase. And the reason I think we need to look at that, at the adjudicatory hearing, no evidence was presented because nobody showed. It's difficult for me to argue to this court what would or would not have been presented had she proceeded to trial. The question is, if all the court's going to look at at that first hearing is, does the child need to be in custody, I'm not sure we have much to argue there. Because our argument is that she was not responsible for it at that point in time. So when you move on to the dispositional phase, though, which is the next phase, I think she does, in fact, have a right to argue all those things. She shows up, gets an attorney, is told what the agreed disposition could be, and they agree to it. Now, at that time, she's an individual. She's a layperson. I don't know what she's told by the other attorney. None of us do. I'm not suggesting he advised her anything wrong or anything like that. I don't know. But I do know that she should have been told by somebody. And the reason we have the rules we have is so courts like this can look at what the lower courts have done and make sure people have been advised as best they can. Here, the trial judge did not tell her, you have a right to appeal this right now. You can appeal. If you think this has not been right, if you think things prior have not been right, this is your time to appeal. She couldn't appeal even the adjudicatory hearing until after dispo anyway. But most people don't realize that. And I think even some lawyers that don't practice in this area might not realize that. Well, she did have a lawyer, though, right? She had a lawyer at the disposition. And it is stated in the written order, isn't it? Yes. And they have no advisement that she had the right to appeal from the judge. Nothing on the record. My position is that that dispositional hearing, by her not being advised that she had a right to do that, we then have a chip in the procedures that we use to get determination. I mean, it's a major issue. And I know this court looks at the procedure, looks at everything very closely. I've argued here on other cases, and I know the court looks closely at the procedures and what's followed because this is a major step that's being taken. I mean, it basically destroys the relationship between a parent and their child. My argument in this case is when you look at everything that happened here and as it goes along, is this the kind of order taking away somebody's parental rights that this court is confident in or believes deprecates to some extent the procedure that was utilized to get there? We have a violation of service, not serving. Nothing has been filed in the record that says we need to do this by publication because we can't find them. That's not filed, and I think that we all agree with that, the state as well. We also, in this particular case, have a situation then where we move on down the road where certain warnings are not given, advisements are not given. And then we then proceed to a point where her rights are terminated, all for a case that started out where she didn't even have control of the child and the child was injured. So it comes kind of full circle, and I understand the waiver arguments. By appearing, by agreeing to the disposition, she's now there. I understand that argument is she could have made all those arguments then. She could have preserved those. She could have done what she wanted. Bottom line is, though, she was never given advice or instruction from the judge, advisement that's required under the statute that says you can now appeal this. It doesn't matter what your attorneys have told you. It doesn't matter what's happened so far. You don't like what's going on. You can appeal this, and that was not given. And I think that's enough when you're terminating somebody's parental rights, where you have a default judgment that's improper in the first place. And then we have another, a second time at a dispositional hearing where the judge fails to say you have a right to appeal everything that's happened. When you start adding all this together, and the end result, we're taking parental rights away forever. Is this an exception to the waiver rule where due process, all these rights have been deprecated? Or does it make the court system, you know, it's a better phrase, smell a little bad to where we want to make them do this again? And I would suggest to the court that this is a serious case and that when you are going to use default procedures, if you're going to follow that up then with another order that substantially affects your right to your child, you should be given the advice that the legislature has said you should be given by the judge, and that is everything we've done here can be appealed. You can attempt to undo it if you want to undo it. And that was never done in this case. I understand the position is a difficult one because of the manner in which all this comes up. We're talking about issues, for example, that she could have raised, but she agreed. And I understand how the argument is that causes a waiver. But I do think this is an obvious error, a plain error. And under the second standard, does it deprecate the whole judicial system itself, this particular case, to the point where it should just be let's do over, let's do this over. And that would be our position, Your Honors. And unless you have any further questions, I would just ask that you vacate the judgment and send it back for further action. Counsel, there's no evidentiary question about the evidence as to fitness or best interests? Your Honor, none has been raised by post-trial motion or otherwise. And I focused only on the procedural issues which I thought were appropriate. I didn't feel as though we, I guess what I'm saying is I raised no issues on those others for good reason. Thank you. Thank you, Counsel. Thank you, Mr. Milner. You'll have the opportunity to rebut Ms. Camden. May it please the Court, Counsel, Jennifer Camden on behalf of the people. To the extent that the respondent is asking this Court to vacate the termination order on the grounds that these earlier orders, the predispositional orders were improper, he cites no authority for the proposition that this form of relief is proper even where his forfeited complaints about these earlier orders are reframed as due process claims. This Court, at this stage of the proceeding where the issue before the Court is whether the termination order was properly entered, the Supreme Court in 2008 in the Leona W case held that there's a jurisdictional problem with regard to the review of these earlier orders. One factual point, the adjudicatory hearing was conducted on June 26th. Then there was a, in Saline County. Then there was a, and the respondent did not appear at that hearing. That was the, where the default judgment was entered. Then there was a status hearing conducted on August the 8th in Marion County. And at that hearing, the respondent was present in custody and was appointed Counsel. Counsel was present at that hearing and represented her at that August hearing. And then the dispositional hearings occurred three months later in November of 2012. I just wanted to make that point. With regard to the claim about notice, the respondent never sought to vacate this default adjudicatory order under the Code of Civil Procedure and never filed a motion under the Code of Civil Procedure objecting to the Court's personal jurisdiction over her due to insufficient process. And the appellate court in the case of Antoine L., cited in the People's Brief, states that where this occurs, that there is no due process claim. She could have, she had counsel even prior to the dispositional order and could have objected to service at that time and could have contested the entry of that default adjudicatory order. She did not. Instead, she personally and with counsel agreed to the entry of the dispositional orders. As to the third claim concerning the admonishment about the right to appeal the dispositional orders, again, there's a jurisdictional problem with that claim. The claim is forfeited because it's raised for the first time in this proceeding. And there's also a question as to what would the remedy be? The respondent's asking for the vacation of the final termination order. Would we then return to the dispositional stage so that she could be admonished as to something which, as Your Honor pointed out, already appears in writing in the dispositional order itself? There's also a question of what could she have done at that point? Number one, she agreed to the entry of the dispositional orders. She's not complaining that she wasn't admonished, that she had the right to appeal the entry of an order to which she agreed. Also, the underlying claims, the other claims that are brought in this appeal, are also meritless. First, because the question of the sufficiency of the evidence at the shelter care or adjudicatory hearings is meritless as the respondent today acknowledged there's a controlling Supreme Court precedent on that matter. And second, any claim on appeal for this dispositional hearing as to the service of notice of the adjudicatory hearing would have also failed because, again, the respondent consented to appear when she appeared and did not contest the court's jurisdiction over her. I mean, a due process claim requires the court to weigh the benefit of additional procedure. But what would the benefit of that additional procedure be in this case? If the court has no questions, I'll rely on it and request that this court adjourn. Thank you, Mr. Chairman. Thank you, Counsel. Your Honor, by no means will we welcome this court has questions. I don't think so. Thank you both for your arguments and briefs. We'll take a matter under advisement. Thank you.